IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REDONDO CONSTRUCTION, CO.,

**Plaintiff**,

**v.**

JOSE IZQUIERDO, *et al.*,

**Defendants.**

CIVIL NO. 01-2690 (FAB)

## OPINION AND ORDER

Before the Court is the motion for summary judgment of defendant Puerto Rico Highway and Transportation Authority, ("PRHTA"), (Docket Nos. 604 & 605); and the motion for summary judgment of defendants Jose M. Izquierdo, Fernando Fagundo, and Jose F. Lluch (collectively, "individual defendants"), (Docket Nos. 602 & 603). Having considered defendants' motions; the oppositions by plaintiff Redondo Construction Corporation ("plaintiff" or "Redondo"), (Docket Nos. 610, 611, 615, & 616); the individual defendants' reply, (Docket Nos. 620 & 621); defendant PRHTA's reply, (Docket Nos. 628 & 629); and plaintiff's sur-replies, (Docket Nos. 625 & 632); the Court **GRANTS** both motions for summary judgment, and dismisses this case, with prejudice.

## I.  SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law."  Id.  A dispute is "genuine" when it "could be resolved in favor of either party."  Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party must demonstrate this absence with definite and competent evidence.  See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Id. (citing Fed. R. Civ. P. 56(c)).  Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

The non-movant must show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial."  See First Nat'l. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must

affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial.  See id.; Goldman v. First Nat'l. Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1992).  It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'"  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (internal citation omitted).  The nonmoving party has the burden of producing "specific facts, in suitable evidentiary form" to counter the evidence presented by the moving party.  Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

In making a summary judgment assessment, the Court must view the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011).  The Court does not, however, "make credibility determinations or weigh the evidence."  Anderson, 477 U.S. at 255.  The Court may safely ignore "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."  Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010).

The First Circuit Court of Appeals has "repeatedly . . . emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernandez v. Phillip Morris U.S.A., Inc., 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is - and what is not - genuinely controverted.'" Id. (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c). Facts which are properly supported "by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. Rule 56(e). The Court may, however, "disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Loc. Rule 56(e). "The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." Due to the importance of this function to the summary judgment process,

"litigants ignore [those rules] at their peril." Hernandez, 486 F.3d at 7.

## II.   DEFENDANT PRHTA'S MOTION FOR SUMMARY JUDGMENT

### A.   The Parties' Contentions

Plaintiff argues that it has two remaining claims against defendant PRHTA: (1) a tort claim pursuant to article 1802 of the Puerto Rico Civil Code[1] and (2) a claim for economic damages because of defendant PRHTA's breach of the Settlement Agreement.[2] (Docket No. 615 at pp. 1-2.) Defendant PRHTA argues that plaintiff advances no evidence establishing that plaintiff suffered "damages" as a result of defendant PRHTA's breach.   (Docket No. 604.)

---

[1] Plaintiff's second amended complaint lists as a fourth cause of action: "Defendants, through their acts or omissions, negligently or maliciously, caused [plaintiff] significant economic damages . . . ." (Docket No. 262 at pp. 32-33.)  The Court finds this claim to invoke both article 1802 and 1803 of the P.R. Civil Code.  Article 1802 permits a plaintiff to recover damages when "by an act or omission [a defendant] cause[s] damage to another through fault or negligence."  P.R. Laws Ann. tit. 31, § 5141.  Pursuant to article 1803, an employer may be vicariously liable for the fault or negligence committed by an employee.  P.R. Laws Ann. tit. 31, § 5142; Vernent v. Torres, 740 F.Supp.2d 280, 286-87 (D.P.R. Sept. 28, 2010).  Moreover, in Puerto Rico, "if a party is damaged by acts or omissions that constitute both a breach of contract and breach of duty, the damaged party may make a tort claim based on the breach of contract."  Constructora Lluch, 169 F.3d 68, 79 (1st Cir. 2009).  That is the case here, where plaintiff seeks damages pursuant to article 1802 for defendants' breach of the Settlement Agreement.  (See Docket Nos. 1, 162, & 262.)

[2] The First Circuit Court of Appeals and this Court recognize that the Commonwealth of Puerto Rico courts already held defendant PRHTA's withdrawal of consent to the Settlement Agreement to be invalid, which leaves unresolved "only the issue of whether [plaintiff] was entitled to damages for the PRHTA's breach, and if so, how much."  (Docket No. 526 at p. 18; Docket No. 469 at p. 13.)

Pointing to the joint pretrial report, (Docket No. 453), defendant PRHTA contends that only "one piece of documentary evidence" even arguably supports Redondo's claim for economic damages necessary for both causes of action:  the Expert Report on Damages by CPA Rafael Perez Villarini, dated May 14, 2007 ("2007 Expert Report"). (Docket No. 604 at p. 15) (citing Docket No. 605-3).  That evidence, however, (1) fails to address altogether the damages due to Redondo's bankruptcy, its loss of goodwill, compensable bid preparation costs, and liability to plaintiff's subcontractors; and (2) falls short of establishing any economic damages for lost profits and loss of value of plaintiff's business.  (Docket No. 604 at pp. 17-23.)  Defendant PRHTA argues that, therefore, no evidence in the record proves that plaintiff suffered any damages from defendant PRHTA's conduct, and that summary judgment is warranted for both the article 1802 claim and plaintiff's damages claim for breach of contract.  Id.

In response, plaintiff directs the Court's attention to CPA Perez Villarini's updated Expert Report dated September 30, 2010 ("2010 Expert Report"), (Docket No. 634-1), as well as CPA

Villarini's deposition testimony, (Docket No. 634-2).[3]  To dispute defendant PRHTA's contention that no evidence exists to support a damages calculation, plaintiff points to the deposition testimony of CPA Villarini that discussed the "before and after method" utilized to figure plaintiff's damages.  (Docket No. 604 at p. 31) ("CPA Perez Villarini adjudicated a value to [plaintiff] and estimated the net worth loss of the company based on all of the different components that were affected by the breach . . . .").

### B.    Evidence of Damages

Relevant to both the first element of the article 1802 claim[4] and the damages claim for breach of contract, plaintiff's second amended complaint alleges that its "economic

---

[3] Plaintiff also states that it intends to call Jorge Redondo-Borges, the President of Redondo Construction Co., to testify at trial about "the damages which [plaintiff] has suffered."  (Docket No. 615 at p. 31.)  It provides for the Court's summary judgment consideration, however, only (1) a citation to the joint pretrial order — which contains a one-sentence summary of the general subject matter of Mr. Redondo's anticipated trial testimony, (Docket No. 615 at p. 31) (citing Docket Nos. 453-54 at p. 101); and (2) five pages of Mr. Redondo's deposition testimony — which contain only one sentence even slightly related to damages: "I'm claiming there that they owe me a million dollars ($1,000,000)," (Docket No. 616-2).  Neither of those documents, however, presents more than a mere scintilla of evidence of damages, and they surely fall short of the type of definite, competent evidence needed to rebut defendant PRHTA's motion.  See Anderson, 477 U.S. at 252.

[4] To establish a claim for damages under article 1802, a plaintiff must satisfy the following three elements: (1) proof of the reality of the damage suffered; (2) a causal relation between the damage and the action or omission of a defendant; and (3) that said act or omission is negligent.  Muñiz-Olivari v. Stiefel Labs., Inc., 441 Fed. Appx. 4, 6 (1st Cir. 2011).

damages" include "loss of value of its business, bankruptcy, lost profits, loss of goodwill, compensable bid preparation costs, and liability to [plaintiff's] subcontractors."  (Docket No. 262 at pp. 32-33.)  Arguing that the evidence plaintiff offers does not establish any economic damages, however, defendant PRHTA seeks summary judgment for both the article 1802 claim[5] and the damages for breach of contract claim.

          In order to defeat summary judgment, there must be proof in the record that supports plaintiff's contention that it was actually injured as a result of defendant PRHTA's breach of contract and alleged negligence.  See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (explaining that summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim); See also Cash Energy, Inc. v. Weiner, 81 F.3d 147, n.7 (1st Cir. 1996) (unpublished opinion) (regarding as "misguided" a plaintiff's effort to describe the evidence he would present at trial to prove damages because in "summary judgment, . . . the issue is not what [a plaintiff] might be able to prove at trial, but rather what [he

_____

[5] Defendant PRHTA also contends that as a matter of law, plaintiff cannot establish an article 1802 claim because there is no causal connection between its alleged damages and defendant PRHTA's act of breaching the Settlement Agreement.  (Docket No. 604 at pp. 20-23.)  Because the Court finds that plaintiff fails to put forth sufficient evidence to establish damages, however, the Court also need not decide the issue of causation.

or she] has put into the summary judgment record in compliance with
Fed. R. Civ. P. 56 and [Loc. R. 56]"). Upon reviewing the record,
the exact damages plaintiff seeks to recover for defendant PRHTA's
alleged negligence remain unclear.[6] Once again, plaintiff fails to
quantify its damages for the Court. Instead, it merely asserts the
**existence** of damages: for example, it vaguely attributes
plaintiff's "financial collapse" and "ruin" to defendant PRHTA's
breach of contract, (Docket No. 615 at p. 12), and claims to have
"suffered substantial monetary damages . . . which eventually
caused the demise and bankruptcy of [Redondo]," (Docket No. 262 at

---

[6] The Court already found that plaintiff failed to address
damages in its responses to defendants' earlier motions. (See
Docket No. 595 at p. 23) ("It is currently unclear to the Court
exactly what damages plaintiff seeks to recover for its breach of
contract and article 1802 claims."). Also, in the section of the
proposed joint pretrial order titled "Plaintiff's Legal Theory As
to the PRHTA/Secretary of DTOP," plaintiff failed to identify its
damages. (See Docket No. 454 at pp. 1-8.) The only damages on
which it did elaborate, in fact, were those "resulting from the
breach by the PBA of the Settlement Agreement . . . including the
cancellation of the individual bids awarded to [plaintiff],
recommended for award to [plaintiff], those in which [plaintiff]
was the lowest responsible bidder[,] and the termination of the Van
Scoy School contract." (Docket No. 454 at p. 10.)

p. 32).[7]   Plaintiff's failure to provide a computation of each
category of damages sought against defendant PRHTA — which, the
Court notes, plaintiff was required to do in its initial
disclosures over a decade ago to defendant PRHTA[8] — leaves the
Court with very limited evidence upon which to address defendant

---

[7]  Instead of explicitly countering defendant PRHTA's argument
with enumerated damages, plaintiff first resorts to an estoppel
argument: "It is beyond our comprehension how the PRHTA, having
committed itself with strong and unequivocal statements recognizing
that [plaintiff] has available a remedy in damages . . . can now
seriously allege that Law 458 forbids it from complying with its
contractual obligations . . . or redressing [plaintiff] for the
damages resulting from such breach of contract[,]" (Docket No. 615
at p. 21); "It is outrageous that [defendant] pretend[s] to be
allowed to raise that defense after more than a decade of denying
the alleged preclusive effect of Law 458[,]" id. at p. 30.

Plaintiff then cites various courts' rulings that recognize
the theoretical availability of damages under Puerto Rico law.
(See Docket No. 615 at p. 26) ("As the Puerto Rico Court of Appeals
correctly and now irreversibly recognized, plaintiff still has
readily available damages remedies at its disposal."); id. at p. 30
("[B]oth this Court and the First Circuit rejected [plaintiff]'s
Contracts Clause claim based precisely on the availability under
Puerto Rico Law of an adequate remedy for [plaintiff]'s damages
resulting from the breach of contract."); (see also Docket No. 632
at p. 10) ("Law 458 existed then just as it exists now, and . . .
this Court, nor the First Circuit, raised that Law 458 precluded in
any way the specific performance of the [Settlement Agreement]
ordered by the PR Appeals Court or [plaintiff]'s ability to be
fully compensated in damages."). Alone, plaintiff's arguments are
insufficient because they do not provide "definite, competent
evidence," from which a trier of fact could reasonably measure
damages.  See Maldonado-Denis, 23 F.3d at 581.

[8]  Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), a party must
provide the other parties with "a computation of each category of
damages claimed by the disclosing party — who must make available
for inspection and copying . . . the documents or other evidentiary
material . . . on which each computation is based, including
materials bearing on the nature and extent of injuries suffered
. . . ."

PRHTA's argument.  The Court thus resorts to CPA Villarini's Expert Reports on Damages as well as his testimony — both of which plaintiff argues support its damages claim, (see id. at p. 54; Docket No. 615 at p. 31; Docket No. 632 at p. 7), — to determine whether plaintiff indeed advances sufficient evidence of damages to survive a motion for summary judgment.

### 1.    Plaintiff's Expert Reports

Expert reports are inadmissible hearsay.  Thus, because plaintiff's 2010 Expert Report is unsworn, it is an inadmissible hearsay document that cannot be considered as part of the summary judgment record.  See Pack v. Damon Corp., 434 F.3d 810, 815 (6th Cir. 2006) (expert report was "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment"); Capobianco v. City of N.Y., 422 F.3d 47, 55 (2d Cir. 2005) (stating that unsworn physician's letters "generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment"); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").  To be considered at the summary judgment stage, therefore, CPA Villarini's expert opinion must be elicited through the testimony of the expert witness himself, not through his report.

## 2.   CPA Villarini's Deposition Testimony

### a.   Standard

Pursuant to Federal Rule of Evidence 702 ("Rule 702"),[9] a witness may testify to scientific, technical, or other specialized knowledge if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). In determining the admissibility of that testimony, a trial court "must perform a gatekeeping function and decide whether the proposed testimony, including the methodology employed by the witness in arriving at the proffered opinion, rests on a reliable foundation and is relevant to the facts of the case." Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001) (internal citations omitted). Whether an expert meets these criteria is "a case-specific inquiry and . . . a question that the law grants the trial judge broad latitude to determine." Id. at 64. "The Daubert regime can play a role during the summary judgment phase of civil

_____

[9] Rule 702 provides for expert testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

litigation.  If proffered expert testimony fails to cross <u>Daubert</u>'s
threshold for admissibility, a district court may exclude that
evidence from consideration when passing upon a motion for summary
judgment."  <u>Cortes-Irizarry v. Corporacion Insular de Seguros</u>, 111
F.3d 184, 188 (1st Cir. 1997) (citations omitted).   The First
Circuit Court of Appeals has stated, however, that "at the junction
where <u>Daubert</u> intersects with summary judgment practice, . . .
courts must be cautious — except when defects are obvious on the
face of a proffer . . . ."  <u>Id.</u> ("[T]he <u>Daubert</u> regime should be
employed only with great care and circumspection at the summary
judgment stage.").

**b.   Analysis**

In his deposition, plaintiff's expert, CPA
Villarini, explained that he relies on what is commonly known as
the "before and after method" to estimate plaintiff's alleged
compensatory damages.  (Docket No. 634-2 at p. 3.)  Referencing
both his 2007 and 2010 Expert Reports, he stated that his
calculation:

> "start[s] from the premise of [plaintiff]'s net worth at
> the time which we believe that the damages begin [— in
> 2002 — and] to that net worth, . . . we add [plaintiff]'s
> capacity to generate income.  And then . . . we compute
> a net worth and we compare that recomputed net worth with
> the reality of [plaintiff]'s net worth at the present
> time.  The difference between one and the other, before
> and after, are the damages."

(Docket No. 634-2 at pp. 7–8, & 17.)  His position "is that
[defendant PRHTA]'s action of not allowing [plaintiff] to bid

caused [plaintiff] such a violent impact that it affected [plaintiff] in every sense," id. at p. 12, and that "the suspension imposed upon [plaintiff] by [defendant PRHTA] was responsible for its operational and financial collapse."  Id. at p. 14.  By imposing a sanction on plaintiff, defendant PRHTA "had the capacity to literally remove [plaintiff] from its construction business.  In fact, it did so."  Id. at p. 14.  He concludes, consequently, that the "significant economic damages" alleged in the complaint — including loss of value of business, bankruptcy, loss of profits, loss of goodwill, noncompliance towards contractors due to not having the funds to meet its obligations, loss of credit, ability to obtain bonds for construction works, and financing to continue its business activities as a general construction contractor — are all "combined" and encompassed within his entire computation of damages.  Id. at pp. 11-13.

The Court finds CPA Villarini's conclusions regarding plaintiff's alleged economic damages to be premised on a faulty assumption, and therefore, to be unreliable. In his deposition, CPA Villarini refers to his 2007 and 2010 Expert Reports[10] to explain his damages calculations, which rest on two alternate methods: the "Gross Profit Method," (Docket No. 634-1 at

---

[10] Even though the documents themselves are inadmissible hearsay, the 2007 and 2010 Expert Reports shed light onto CPA Villarini's methodology and thus are considered for the purpose of determining the reliability of his expert conclusions.

pp. 14-18), and the "Capital Loss Method (Stockholders' Equity or Net Worth)," (Docket No. 634-1 at pp. 18-24).  Pursuant to the gross profit method, CPA Villarini computes damages by calculating the value of the construction bids for projects that defendant PRHTA granted between August 1, 2000 and December 31, 2006 "in which [plaintiff] could participate." (Docket No. 634-1 at p. 15.) He therefore "**assume[s] that [plaintiff] could have submitted bids for contracts from December 11, 2000 to the present, without interruptions, for construction projects carried out by [defendant PRHTA]** . . . ."  Id. at pp. 16-17 (emphasis added).  He also concludes:

1. **[Plaintiff]'s economic situation was affected principally because of the lack of projects from [defendant PRHTA] after December 2000, due to [defendant PRHTA]'s refusal to allow [plaintiff] to bid for contracts and to acquire projects with that government agency since April 1999.**

2. [Defendant PRHTA] had enough projects during 2001, 2002, 2003, 2004, 2005, and 2006 to satisfy [plaintiff]'s demand for construction projects during said years.

(Docket No. 634-1 at pp. 17-18) (emphasis added).

CPA Villarini alternatively determines plaintiff's alleged economic losses since the year 2001 "by recalculating its capital (stockholders' equity or net worth)." (Docket No. 634-1 at p. 18.)  In arriving at that damages computation, CPA Villarini admits:

**[T]he following was assumed:**

**(1)  [Plaintiff] had the capacity to bid for [defendant PRHTA]'s projects as was customary for it;**

**(2)  [Defendant PRHTA]'s contracts could have been awarded to [plaintiff], and [plaintiff] could have carried out said contracts in a similar manner as it had done on previous years, that is to say, a scenario which allowed [plaintiff] to bid for contracts without the debarment issue;**

(3)  [Plaintiff] could maintain the same level of operations that it had in previous years; [and]

(4)  the market and the economic conditions in the years prior to 2001 would have also been present during the projected period.

(Docket No. 634-1 at pp. 18-19) (emphasis added).

CPA Villarini's deposition testimony and the excerpts from his Expert Reports demonstrate that his damages calculations are premised on the crucial assumption that it was possible for defendant PRHTA to have awarded plaintiff contracts from December 2000 to the present. Given the law of this case, however, that assumption is incorrect. In an Opinion and Order dated November 1, 2002, the Court held that "[p]laintiff has no right to participate in government bidding or government

Civil No. 01-2690 (FAB)                                    17

contracts."[11]   (Docket No. 112 at p. 14; see also Redondo
Construction Co. v. Izquierdo, 2012 U.S. Dist. Lexis 171954 at * 25
(D.P.R. 2012.))  Because plaintiff entered a plea of guilty to a
crime listed in the debarment statute, (Docket No. 112 at p. 2),
and "[i]n essence, no bid or public contract after December 2000
shall be awarded to anyone convicted of the crimes listed in the
debarment statute[,]"[12] id. at p. 27, the Commonwealth barred
plaintiff from participating in any bidding through the
Commonwealth's administrative agencies.  Id. at p. 3.  It was not
possible, therefore, for defendant PRHTA to award plaintiff with a

---

[11] In light of the Court's ruling, defendant PRHTA argues:

> "[I]t will be impossible for [plaintiff] to
> claim damages after the enactment of Law No.
> 458 of December 29, 2000, either under the
> contract or tort provisions of the Puerto Rico
> Civil Code, since Redondo has no right to bid
> according to the aforementioned Opinion and
> Order. See Docket 112 [at] p.14. More relevant
> to the matter at hand (i.e., PRHTA's summary
> judgment motion before this Honorable Court),
> the entire quantification of Redondo's alleged
> damages as done by its expert witness (whether
> on the 2007 or 2010 report) is based on the
> wrong premise that Redondo could keep
> participating in PRHTA public procurements."

(Docket No. 628 at p. 7.)

[12] The Court has held that "[i]n general, the statute prohibits
any agency chief or any head of a public instrumentality from
awarding a government contract to any person, natural or legal,
that has been found guilty or entered a plea of guilty in any
jurisdiction in the United States."  (Docket No. 112 at pp. 2-3.)

government contract during the years between 2002 and 2009, as CPA Villarini's damages calculations assume.

Plaintiff contends that defendant PRHTA's argument that Law 458 forbids defendant PRHTA from awarding bids to plaintiff means that "a much different conclusion should have been reached in [plaintiff's] Contract Clause challenge . . . ." (Docket No. 615 at p. 22.)  Alleging that the specific performance or the availability of damages to plaintiff "were **the** factors that rendered unnecessary an analysis under the Contracts Clause[,] (Docket No. 632 at p. 4), plaintiff argues that the Court's acceptance of defendant PRHTA's argument must lead to reconsideration of plaintiff's Contracts Clause claim.  (Docket No. 632 at p. 10) ("If, as the PRHTA contends, specific performance is not possible, and because of that, no duty to pay damages exists, then the Contracts Clause claim is very much alive.")

Affirming the Court's grant of summary judgment on plaintiff's Contract Clause claim, the First Circuit Court of Appeals stated, "To establish a Contracts Clause claim, Redondo must show more than a breach of the settlement agreements; it must show that the defendants have somehow impaired **its ability** to obtain a remedy for a demonstrated breach." Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 48 (1st Cir. 2011) (emphasis added).  The reality that Law 458 precludes plaintiff from receiving a bid or public contract after December 2000 because of

Civil No. 01-2690 (FAB)                                                    19

its guilty plea does not *ipso facto* "prevent[] Redondo from
obtaining a remedy for a demonstrated breach of the settlement
agreements[;] . . . excuse[] [defendant PRHTA] from compensating
Redondo in damages if Redondo establishes a breach of contract[;]
. . . or [preclude plaintiff's] entitlement to compensation in
damages if it succeeds in showing breach of the settlement
agreements." Id. at p. 48.  To the contrary, plaintiff was free to
sue defendants for the breach and indeed did so.  Id.  The issue
before the Court is of an entirely different character — whether,
in that subsequent lawsuit, plaintiff "was entitled to damages for
[defendant PRHTA]'s breach, and if so, how much."  Id. at 50.
Given plaintiff's failure to proffer sufficient evidence from the
record to establish damages, plaintiff forces the Court to answer
in the negative.

              The Court recognizes that the exclusion of
expert testimony "is the exception rather than the rule," United
States v. Martinez-Cintron, 136 F. Supp.2d 17, 20 (D.P.R. 2001);
and it acknowledges plaintiff's admonition that the calculation of
damages is generally left to the province of a jury.  See, e.g.,
Benjamin v. Hillard, 64 U.S. 149, 167 (1860) ("No doubt, . . . all
questions of damages are, strictly speaking, for the jury; and,
however clear and plain may be the rule of law on which the damages
are to be found, the act of finding them is for them.").
Plaintiff's proposed evidence, however, cannot be used to support

its claim for damages because the unsworn Expert Reports are inadmissible hearsay and CPA Villarini's conclusions are premised on an incorrect assumption.  Plaintiff has presented nothing, therefore, that would permit a reasonable jury to return an award of damages.  See Anderson, 477 U.S. at 252 ("If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, the judge must ask himself [or herself]. . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.")

     The Court also has not lost sight of the fact that article 1802, "being a remedial statute, should be liberally construed to accomplish its purpose."  In re Caribbean Patroleum, LP, 561 F. Supp. 2d 194, 199 (D.P.R. 2008) (citations omitted).  On numerous occasions, however, plaintiff neglected to present evidence from the record demonstrating that its claim to damages does not rest entirely upon "conclusory allegations, improbable inferences, and unsupported speculation."  See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  At the summary judgment phase, failure to do so is fatal. See Loc. R. 56(e) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."); Hernandez, 486 F.3d at 7 ("[L]itigants ignore [summary judgment rules] at their peril."); Jones v. Secord, 684 F.3d 1, 6 (1st Cir.

2012) (explaining that a party's expectation of the district court to "engage[] *sua sponte* in an independent review of the docket is the functional equivalent of expecting the court to do the lawyer's job.").

### III. The Individual Defendants' Motion for Summary Judgment

Plaintiff's only remaining cause of action against individual defendants Izquierdo, Fagundo, and Lluch is "for damages under [a]rticle 1802." (Docket No. 611 at p. 6.) Having found no evidence in the record to support a finding of plaintiff's alleged economic damages, the Court also necessarily finds that plaintiff's damages claim against the individual defendants cannot be established. It is widely acknowledged that district courts "possess the power to enter summary judgments *sua sponte* so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); see also P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 64-65 (1st Cir. 2008). In this case, plaintiff's entitlement to economic damages was placed directly at issue in defendant PRHTA's motion for summary judgment — more than a decade after the lawsuit began — and plaintiff's cause of action against individual defendants draws from its article 1802 and damages claims against defendant PRHTA. Thus, the two required conditions prior to a court's *sua sponte* entering of summary judgment have been met: (1) The discovery process was "sufficiently advanced

Civil No. 01-2690 (FAB)                                        22

[such] that the parties have enjoyed a reasonable opportunity to glean the material facts," and (2) plaintiff received "appropriate notice and a chance to present its evidence on the essential elements of the claim . . . ." <u>Action Refund</u>, 515 F.3d at 64-65.[13] Accordingly, summary judgment is warranted as to plaintiff's damages claim against the individual defendants.

**IV.   CONCLUSION**

Plaintiff has failed to rebut the claim that no admissible evidence supports a finding of damages.  Summary judgment, therefore, must be granted as to all remaining causes of action against defendant PRHTA and individual defendants.  Accordingly, the Court **GRANTS** defendants PRHTA's and individual defendants Izquierdo, Fagundo, and Lluch's motions for summary judgment, (Docket Nos. 604 & 603, respectively).

This case is **DISMISSED, with prejudice**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 28, 2013.

                              <u>s/ Francisco A. Besosa</u>
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE

_____

[13] Indeed, individual defendants had filed their own motion for summary judgment, albeit on alternative grounds than those of defendant PRHTA.  (<u>See</u> Docket Nos. 602 & 603.)